The Illinois Appellate Court's second individual is now in session. The Honorable Justice Rena Marie Van Tine is presiding. Hello, good morning. Would counsel please approach the bench. Would you please identify yourself, starting with counsel for the appellant. My name is Lynn Dowd for the appellant, Carlos Garcia. Michael Rice for the Appellate American Family Mutual Insurance. And please be seated. Thank you. So Ms. Dowd, we have received your motion to cite additional authority, but we just received it yesterday. So we will allow, and it's kind of like so close to oral arguments, that we will not be considering it for oral arguments. So neither side should argue the case just for oral arguments. But you are given leave to do a separate filing, and Mr. Rice will grant you leave to respond to it. Okay, five days. And Ms. Dowd, whenever you're ready. Each side will be given 15 minutes. Do you wish to reserve any time for five minutes, please? Okay. Good morning, Madam Justices. Good morning. My name is Lynn Dowd. May it please the Court. And I am here on behalf of the plaintiff appellant, Carlos Garcia. Today this Court is being called upon to review the correctness of the trial court's decision in determining that my client's declaratory judgment cause of action was time barred under the Wisconsin tort statute of limitations, specifically Section 893.54. The Wisconsin statute allowed three years to file a personal injury action as compared to the Illinois statute that allows two. As such, this Court is being called upon to address a single sentence in the American family insurance policy, namely whether, quote, we may not be sued under the uninsured motorist coverage on any claim that is barred by the tort statute of limitations. Close quote. It's our position that this particular provision can be construed in favor of the insured, contrary to the way American family advocates, which is what the law requires. If it can be. Ms. Dowd, how do you differentiate the Napier versus American family insurance case that's out of Indiana? Thank you, Your Honor. Napier and the Hamms case we cited out of Iowa are two decisions cited that did construe this particular language. Napier, that decision is quite respectfully a little bit difficult to distinguish because there's not a lot of analysis. The Court just said this is what it says, you know, two years is the date, your time barred. So it's difficult to distinguish because we have two states, Wisconsin and Illinois, if the case is analyzed under either of those states' laws, as it should be, that do have other statutes that apply. I'll get into those. Are you talking about different tort statutes that could apply? State statutes. Okay. Those jurisdictions have interpreted that apply to statutes of limitations with respect to declaratory judgment actions. Now, here, the circuit court applied the Wisconsin statute of limitations. So I will address that first. Well, didn't he say that under either the two-year or the three-year, the action would be barred? That's correct. Does it really go to the heart of this, whether, you know, you're arguing that there's no true definition of the statute of torts that a reasonable person could interpret? So what difference does it make? Either way, under the two or three, he said that this particular complaint was barred. Well, that's not precisely my position, Your Honor. Okay. I agree with the Court that it said it wouldn't make any difference, but I agree with how he interpreted the outcome. Okay. Because I submit that if this case is analyzed either under Wisconsin law or Illinois law, this Court should find that there is insurance coverage, that the declaratory judgment was timely filed, and I will tell you why. Under the contract, is it your position that the terms are unambiguous? No. And if there is some ambiguity, and if there is ambiguity, exactly what is it that is ambiguous? Thank you, Your Honor. It's our position that this one sentence is ambiguous, and that is the Hamms Court in Iowa construed this exact provision, and its analysis is consistent with Illinois law and Wisconsin law with respect to how that provision should be analyzed. Is there a Wisconsin case that interpreted this particular provision? No, there isn't, Your Honor. There are other cases that interpret it, but I don't recall having a Wisconsin case. I was a little imprecise in that. I think the Wisconsin statutes that apply. And just as a footnote, interestingly, the circuit court determined it's three or statute of limitations. And, again, I'm not trying to repeat myself that whether you analyze it either way, you should rule in favor of our clients. But significantly here, American Family doesn't try to defend that ruling at all, that the Wisconsin three-year statute of limitations applied. They've only argued in favor of Illinois law. So in a strange way, American Family is agreeing with us that the circuit court erred, at least in part, in its decision. We think it erred completely, but I'll get into that. Now, back to your ambiguity question, Justice Van Tine. American Family wrote the policy, and it said we may not be sued on any claim that is barred by the tort statute of limitations. What claim? To what claim are they referring? It's our position that the claim is the claim plaintiff filed against the tort feeser, Mr. Sanchez-Lopez. And it is undisputed that that negligence claim was timely filed. There's no dispute as to that. The accident happened in March of 2015. But what about the wording, the tort statute of limitations? Wouldn't it be clearer for a layperson if it was just laid out, like two years or three years, versus just tort statute of limitations? How is a layperson supposed to make heads or tails out of that? Absolutely. And quite frankly, how are attorneys and judges likewise supposed to make heads and tails out of that? Because in the legion of cases upon which American Family relies, in those policies, the carrier said no action can be filed against us unless it's within two years after the date of the accident. They wrote the policy. They could have said that very simply. And they didn't. So they chose to, and, you know, I mean, we can think that the carrier is acting in good faith, like why they chose that language. But I think reasonably, barred by the tort statute of limitations, gives them the option to go into any state and, as they've done here, a Wisconsin policy, and they've argued all along from day one that it's the Illinois two-year statute of limitations because that's shorter than the Wisconsin three-year. I don't know why they didn't take the position. Well, I mean, it's a choice of law issue, but they didn't even argue in the alternative. And perhaps going back to, and I forget which of your honors asked me the question, perhaps the reason they haven't advocated that their policy is valid under a Wisconsin law, because I haven't found any case that has upheld this particular provision in Wisconsin. Wisconsin, however, does have a statute, 893.43, that expresses states actions on contract must be commenced within six years after the cause of action accrues. And accrual pertains to when the adjudication against the tort feasor has concluded. So that's Wisconsin law. And if that's applied to this case, the adjudication against the tort feasor, Mr. Sanchez-Lopez, didn't happen until May 24th, 2024. So under Wisconsin law, we're still within statute of limitations to even bring a deck action against American family. But also, it should be noted that on the facts of this case, back in 2021, American family took the position with our client, it's ensured that a six-year statute of limitations applied. When a representative of that company phoned our client in March of 2021, alerting his attorney, listen, you've got a few days left to file your deck action. I mean, we thanked them for doing that. I don't know why. But, you know, they said there's a six-year statute of limitations that was, at that time, due to expire in another 12 days. So counsel, of course, proceeded to file the deck action within that remaining 12 days. So back in 2021, American family took the position that the deck action was timely filed. So are you arguing that that's some sort of admission? Yes. Deck admission against interest or some sort of detrimental reliance? All of the above, Your Honors. In a sackle, I suppose we could throw that in, too. I'll take whatever. But in any event, Your Honors, back to examining the applicability. Under Wisconsin law, there's a statute saying we have six years after the cause of action approves, but even under Illinois law, as, Your Honors, I'm sure know, under 13-206, there's a ten-year statute of limitations for contracts, and there's legions of case law that interpret the obligations of an insurance carrier with respect to what it has to do. And the Dickman case that we did cite says that there's a duty to deny coverage within a statute of limitations. That didn't happen here. If counsel says Illinois law applies, they didn't comport with that because we filed our declaratory judgment action March 22nd, 2021, and they didn't even deny coverage until a month later, April 22nd, 2022. So that violates Illinois law. Well, what are you arguing for the statute that we should apply, if any? Well, the court didn't read the choice of law issue, so. Well, forget about that for now. Is this a tort action or is this a contract action? This is a contract action. A declaratory judgment absolutely is a contract action. What's our basic statute of limitations for contract actions? Ten years under Illinois law. And what did you say? Six years in Wisconsin? Six years in Wisconsin. But you were within the six years that you've said.  Yeah. And I submit that we still are because that's from the date of the judgment being entered in 2024, and Illinois law is until the claim is denied in full or in part. You have to deny the claim. And, you know, I'm sorry I got lost in my brief on justiciability. You cited Hamm. What did the court do in Hamm? What did Hamm end up doing? The court determined that the exact provision was ambiguous. And for the reasons we've said, that there has to be a triggering date, denial of coverage, the date that the adjudication is against the tortfeasor. And so applying Hamm. Hamm also had to come up with a statute of limitations, didn't they? Yes, they did. The amount of time that they did, Your Honor, forgive me, I forget. I know they ruled in favor of the insurer that the insurer filed well within the statute of limitations. So it was not, they did not accept the American family argument that the statute starts to run on the date of the accident. And that's what's important here because that's the bottom line of American family's position. They're saying that it expired within two years of the date of the accident. And neither Illinois law nor Wisconsin law finds that. When did the denial actually happen? The denial of coverage in this case? Yes. That happened on April 22, 2021, one month after our client filed their declaratory judgment action. There was no denial up until then. And under Illinois law, there's legions of cases that state that an insurer or any other party to a contract cannot sit on their rights. They can't sit there. And with carriers, they can't sit back and hope that the insurer blows the statute of limitations. So, Your Honors, again, our bottom, our position is, and Your Honors will tell us which State law will apply, whether it's Wisconsin or Illinois, we submit the outcome of our client's claim. Our client's claim should be the same. Our client's claim was timely filed. The declaratory judgment was timely filed. And with respect to interpreting this particular sentence in its policy, our Supreme Court in the Whitehead and Murphy case, the Whitehead Supreme Court case and the Murphy Appellate Court case we've all cited, well, they're within the Shultz case, says the bottom line provision. In the absence of a specific and clear provision regarding the period within which uninsured motorist claims must be brought, the 10-year statute of limitations for contract actions must govern. Based on all of this, Your Honor, we submit that a reversal is warranted. And I thank you very much for your time, unless the Court has any further questions. Any additional questions? Thank you, Counsel. Thank you very much. All right. May it please the Court, Madam Justices, thank you for hearing us. I like the sound of that. Madam Justices. I like it. It does work. It works nicely. All right. Here we are. Michael Ice for Appellate American Family Insurance. Good boy. Let me jump right to the sort of Napier v. Ham distinction that we were discussing, because Ham doesn't do what Garcia thinks it does. In the Napier case, the Court reviewed this language and said, look, this is clear that the only tort statute of limitations that can be at issue in an uninsured motorist situation is the tort statute of limitations for the underlying accident that led to the claim for uninsured motorist. There's no other statute of limitations, no other tort that would be involved here. So that's unambiguous and, therefore, enforced that proceeding. In Ham, on the other hand, the Court actually faced two provisions in the insurance policy and it's the presence of both of those provisions which really drove the Court's decision. The first was a provision that said that the insurer would not pay a claim until the obligation or until the judgment or recovery was determined against the uninsured motorist. Then the second was the provision on tort statute of limitations. And the Court said, you know, when we read these provisions, quote, we believe the language in the Allied policy is ambiguous as to whether an insurer must first pursue a claim to recover the limits of the tortfeasor's liability coverage prior to filing suit against the insurer for U.N. benefits, close quote. So the Court is, sees a conflict between these two policy provisions that you have to, you have to have a judgment or a settlement that is valued before we will pay and you, and then the provision that says it has to be brought within the tort statute of limitations. The American family policy does not have that first provision. That does not exist in this policy. We just have, of the two provisions that the Ham case looked at, the American family policy at issue here only has the limitation on when you can sue American family. The second critical distinction in that is that the essence of the Ham court's decision that this first provision, which isn't in the American family policy, but which drove their decision was ambiguous, was a decision that the Sheldon court out of this court, the Sheldon case out of this court, looked at previously. And that court reached a different conclusion. The court looked at that provision and said that this is clear, this is not ambiguous. The exhaustion clause in no way conditions when a suit can be filed against country mutual but instead qualifies only when it will pay a claim. Do you draw any distinction between whether a claim is covered one way or the other and it is covered but we don't know what the range of coverage is? I'm not sure I understand the question. I don't think there's, I mean, if there is clearly coverage that we can determine that there's coverage and that all of the policy conditions have been met, et cetera, et cetera, that's one thing. If there's still an open issue as to what the amount of the payout is going to be, those are separate questions. I think the Sheldon court acknowledged that in finding that the two provisions didn't conflict, that it was the first provision on when we're going to pay may be contingent on a determination of what the payment amount will be. But that doesn't affect the later provision that says you have to solicit within these two years. Are you really suggesting, though, that Ham didn't really consider the same type of language that is in this policy? I mean, the language in Ham says, suit against us. We may not be sued under the uninsured motorist coverage on any claim that is barred by the tort statute of limitations. Absolutely. That is the same provision. And didn't the Ham court, though, eventually say that this was also ambiguous because there's no time frame for the filing? There's no years at all. But in that case, though, the court recognized that the statute of limitations for Iowa was two years. But it went on to hold that there had to be some time frame for the insured. And so the court imposed the 10-year statute of limitations for breaches on contract actions. I read the decision and the discussion of the suit against us provision, which is, I certainly concede, is the exact same provision that we're dealing with here. But here's what they said. The insurer may not be sued. This is how they interpreted it. The insurer may not be sued under the UMI coverage on any claim that is barred by the tort statutes of limitations, that that near neither clearly articulated a limitations period, i.e., how many years, okay, nor the event upon which the limitations period would begin to run. So they found two flaws, and one of them was not having any years that could be defined. And the question about when does, when would the limitation period begin to run goes to the issue of, okay, when does one of these claims arise? And if it's a straightforward statute of limitations issue as it applies to the policy, then the question doesn't. It is there. Is it, does it arise at the time of injury? Most courts say it arises later. It approves. Yeah. They brought out three different periods or time frames that could be applied. But at the end of the day, they said, well, this doesn't have a time frame. We're going to impose the contract action statute of limitations for 10 years because this is a breach of contract action. But let me ask you this. You didn't have a chance. You did not have a chance to talk about HAM because it was first mentioned in the reply brief. All right. But are you aware, though, that in that HAM case that the Supreme Court reversed two decisions that involved American family? Like the Morgan case and the Douglas case were both suits against American family, and then there was Douglas. And, of course, in those cases, the Supreme Court actually did the opposite of what it did in HAM, and it overruled those cases. Yes. So what do you say to that? I mean, this was American family, and then they, I mean, weren't you, wasn't the company aware of these cases that had overruled this language? I can't speak to whether the company was aware of those cases or not. But, you know, we come back to the idea that the limitations period created by the torts statute of limitations doesn't set forward, and this was an earlier question, doesn't set forward a two- or three-year period. But in part, that reflects the fact that if you impose a time limit, at least in Illinois, if you impose a time limit that unduly restricts the time in which the insured can recover so that you end up with a period that's less than what the statute of limitations would have been on the tort claim, that that's then against public policy. So on a policy that exists and is sold across multiple states, you run a real risk if you put in a specific year and then you have a state that ends up with a limitations period that's longer. What do you say, though, to the general complaint that an insured shouldn't have to call, contact, make, you know, make a decision or determine for themselves what the tort statute of limitations is in Illinois? How would any person, reasonable person, know that, oh, that's two years, so I have to file my suit within two years? I mean, that's how we kind of generally interpret policies, don't we? So that, you know, the burden on a person shouldn't be more than what it would be on a reasonable person. And what reasonable person, you know, walking down the street, if you asked them, what's the tort statute of limitations in Illinois, do you think they'd be able to say, oh, it's two years? Probably not. Okay. So what do you say to that argument, that we have to interpret it, you know, with this reasonable person standard in mind? I think you have to interpret it in the light of the reasonable person who is contemplating a suit against the insurance company. And so the idea that they're going to get legal advice and they're going to have, that there are going to be lawyers involved that are going to be looking at this, it's not a foreign idea, because what we're talking about is. So they are going to have to contact a lawyer. What we are talking about, yeah. What we're talking about is suing the insurance company. Sure. But do you think that a person should have to contact a lawyer in order to interpret their own policy? I think if they're going to, if they're contemplating suing American Family, then yes, they will be contacting a lawyer, and this would be within the realm of what they'll discuss. And isn't that what some of these cases have said, though, that a reasonable person shouldn't have to go outside the policy, call a lawyer and say, how much time do I have to sue? But in this case, American Family actually told this particular plaintiff or person that the statute was going to run in six years, that it was almost about to run, because it was a six-year statute? Your Honor, Justice McBride, that was, that is a statement that appears in the brief. There is nothing in the record that establishes that call. But even if it's true, circle back to everything that's said apparently in that conversation. This is, the American lawyer person said, this is a Wisconsin policy. And had they sued, the forum matters, because the forum selects its procedural statute of limitations, the forum is going to apply its statute of limitations. So Wisconsin statute of limitations. We didn't know about the underlying lawsuit against the uninsured. If you're going to bring a breach of contract claim in Wisconsin against American Family, it is a six-year statute of limitations. But the plaintiff was the champion of its own father action, is sued in Illinois. You know, I do have one other question. Sure. It seems to me that, you know, when the attorney first contacted American Family, you know, the lawyer provided a name, Carlos Garcia, and then the insurance company said, well, we don't have anything that we can, you know, connect that with. Is it, would it be their position that that's too common of a name? Yes. I mean, what they got was, we have a demand for arbitration, and there was no arbitration in the policies. And we want full payout. Our client, Sergio Garcia, said, okay, well, when you make a claim with an insurance. It was Carlos Garcia. Carlos Garcia, I'm sorry. I'm bringing in the golfer. If you're bringing, if you make a claim with an insurance company, you get a claim number. And you start the process, and then it's in the records. And what American Family is telling me is that. Was there a point at the first letter? Who gets, who initiates the claim? Well, the first, the first notice of loss, as we call it, involves, okay, what's your insurance policy? And so the response back was, if you've made a claim, and through the claim process, give us the claim number, because then we can associate this with that, and we know what's going on. If you haven't, give us the policy number so that we can figure out who you are. Yeah. And. But a name isn't going to be good enough. No. I mean, you can. Is it because this name was maybe too general or something? I'm just trying to find out. Yeah, I mean, I can't imagine why a person can't identify themselves and say, you know, I was involved in an accident on March 23, 2015. My name is Carlos Garcia, and we're seeking a claim. Then the insurance company is the one that gives them the claim number. They can't come up with a claim number. They absolutely give them the claim number, and the question was, have you already done this, so do you have a claim number? In the absence of that, what's your policy number? So we should, you know, because it, you know, we can't just assume that there's a policy that covers this. Okay. And give us your, you know, it's interesting, in that notice that we got from Mr. Garcia's counsel, the last line of it was, well, we're going to assume that we have met all the needs of the policy unless we hear from you. And they did hear from us. They heard from them within a week saying, we need more information. Ignored it. Never came back to us, never provided the additional information. So it's not. Mr. Rice, until your client denied coverage, was there a case for controversy between it and the plaintiff? I believe there was a sufficient case for controversy for a declaratory judgment, particularly given the length of time between the May 2016 submission, which Mr. Garcia believed was notice to American Family, and then American Family getting additional information. You know, could it have been finally resolved? I don't know. I think there was enough to justify bringing the declaratory judgment action, and yet if you have to hold it in abeyance until the underlying action gets resolved, that's fine. But I think there was a case for controversy sufficient under the Declaratory Judgment Act to bring that claim. Which came first in this case, the dismissal of the DEC action, or the default and judgment entered against the tort appeasement? There was an order granting American Family's motion to dismiss, which came before the default judgment. So how would that be right if there had been no determination of any fault at that point? Well, because it was based on the statute of limitations. And, I mean, you can determine, okay, either it has or it hasn't. Either this was or was not filed within the statute of limitations. The underlying fault and what happens in the default judgment doesn't impact that legal determination. Anything further? Anything, any additional questions? Thank you very much. Thank you. Ms. Dowd, a little. Your Honor, just a couple of points to clarify some issues. First of all, if Illinois law applies and under, if American Family's contentions are accepted, their position that the two-year statute of limitations applied cannot be reconciled with Illinois's non-suit rights. So it has to fall on that ground additionally. There's a statutory right to voluntarily dismiss a lawsuit, which happened here, and a right to refile within one year. So if exercised by a litigant, which is an absolute right, they have an automatic statute of limitations defense. So that cannot stand by itself. Secondly, with respect to the Shelton decision and those other decisions that American Family relies upon, specifically. In Shelton, the Court said that the statute of limitations for action against an insurance company could be shortened. And in that particular case, there was a provision that shortened the period, wasn't there? Yes, there was, Your Honor. But in this instance, Illinois has this particular issue, this particular provision, has not been decided. Isn't that correct? That's correct, Your Honor. But also, significantly in Shelton, the Court determined that the insured waived Section 143.1 of the Illinois Insurance Code, which is the tolling provision that says any provision shortening the time within to bring a deck action is tolled from the date proof of loss is filed in whatever form or until the date the claim is denied in whole or in part. We did not waive that here, and that's at page C213 in the record. So that's a very important legal distinction between the two cases. Just a minor point with respect to that telephone call from the representative. It was never, it's unrefuted that that happened. There was never any dispute below in the trial court. And then with respect to what American Family asked for, we do have this in our briefs. There was no requirement for us to give more information. They sent a response saying, well, okay, you've given us this information. If you, if there's anything. Did either of the letters say anything more or give any more information than simply, you know, Carlos Garcia and that the date of loss was on March 23rd, 2015? It gave the information required under the policy. And the carrier responded, if you have anything else, if available. They didn't tell us it was a requirement. What is your interpretation that, what is actually required under the policy? Just the name? The name, the date of loss, yes. That's it? Yes, ma'am. And what provision, I mean, that's in the policy. I can't say I have none. I apologize. What about the provision in policy that outlines the other duties for each person claiming any coverage of this policy, including that they have a duty to assist American Family Insurance in any claims or suits, promptly send any legal papers received relating to any claim or suit, in addition to a number of other requirements that are spelled out in the other duties section. And also the duty to notify as soon as reasonably possible the time, place, and details include names and addresses of injured persons and witnesses. Doesn't that impose some sort of additional duty other than just saying a common name of a person and the date of loss? I don't dispute what the policy says, but on this record, Your Honor, I cannot answer whether or not that happened. The initial notice was given, and yet all we have in the record is their initial response. I have no facts that I can honestly tell the Court whether any of that occurred. And what did they say in their initial response? If you have we haven't that they were having some difficulty establishing a claim, and if you have any more information, send it, if available. There was no requirement. They didn't delineate any of those specific items. Then you sent another letter. Pardon me? Then another letter was sent, not by you, but the attorney. Right? Didn't they send two letters with the same notice of each other? There was the date or something, but they sought some help from the attorney. Well, there's the initial negligence action and the notice of claim, the attorney's lien, and the demand for policy limits was sent. Then the case was voluntarily dismissed, refiled, and the identical notices were tendered, and the identical response was given from the carrier. So I'm sorry, that's all the information I have. And if I had more, I would certainly proffer that to the Court. So the bottom line here, Your Honor, I think is they wrote the policy, and it's the old adage, say what you mean or mean what you say. You're the author of the policy. And if you meant that they wouldn't, that coverage would be barred on any claim that was barred by the tort statute of limitations, again, that can reasonably mean the underlying negligence claim. Or they could have said a date certain. And I think the Court understands our arguments. And again, Madam Justices, thank you for kind attention. I very much appreciate it. Thank you, counsel. Thank you, counsel. Thank you to both counsels for your well-presented arguments. We will take the matter under advisement. And after receiving any response to the new case that was cited, we will issue a ruling. Five days from today? Yes, five days from today. Business days.  Happy Thanksgiving. Happy Thanksgiving. Yes. Thank you. Thank you. Have a happy holiday. Everybody get some rest. And they're adjourned.